IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| ALLEN D. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-1508-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

H. Peter Evans
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon  97223

     Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Britannia I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

    Attorneys for Defendant


KING, Judge:

    Plaintiff Allen White brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for further proceedings.

<strong>DISABILITY ANALYSIS</strong>

    The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

    The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and
1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for
determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the
burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.
2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the
claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,
disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines
whether the claimant has a medically severe impairment or combination of impairments.  A
severe impairment is one "which significantly limits [the claimant's] physical or mental ability to
do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not
have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine
whether the impairment is equivalent to one of a number of listed impairments that the
Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,
the claimant is conclusively presumed to be disabled.  If the impairment is not one that is
presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the
impairment prevents the claimant from performing work which the claimant performed in the
past.  If the claimant is able to perform work which he or she performed in the past, a finding of
"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and
416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience.  The burden shifts to

the Commissioner to show what gainful work activities are within the claimant's capabilities.

Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able

to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that White had severe impairments of a history of deep venous

thrombosis, hepatitis C, anti-social personality, depression, history of peripheral neuropathy in

the bilateral lower extremities, osteoarthritis, and a history of polysubstance abuse.  However, the

ALJ also found that these impairments, either singly or in combination, were not severe enough

to meet or medically equal the requirements of any of the impairments listed in Appendix 1,

Subpart P of the Social Security Regulations.  After reviewing the medical record, the ALJ

determined that White has the residual functional capacity to perform a modified range of

sedentary work, his short term memory is mildly impaired, his concentration is mildly to

moderately impaired, his intelligence level is low average, his verbal and literacy is average, and

he has an average personality with some anti-social aspects such as some eye contact and no

smiles. Prior to White's 50th birthday, the vocational expert testified that White could work as a

food and beverage clerk, nut sorter, and surveillance monitor. When White turned 50 years old,

his age category changed in the "grids," under which he would be classified as disabled as of that

date. The ALJ concluded that White did not become disabled until he turned 50 years old on

June 13, 2006 and remained disabled through the date of the decision.

## FACTS

White alleges disability as of February 15, 2001 due to deep venous thrombosis, hepatitis

C, anti-social personality, depression, history of peripheral neuropathy in the bilateral lower

extremities, and osteoarthritis. He was 44 years old at the time of his alleged onset date. White

has a GED, and worked as a woodworker, finish carpenter, mill worker, dispatcher, and

warehouse worker.

White claims to have trouble being around more than one or two people at a time. In

groups, he gets severe anxiety. White also suffers from bouts of depression and spends most of

his time alone. Because White has been in and out of prison and jail, he distrusts people and has

become anti-social. He no longer attends church or family barbecues. White has been homeless

since 2000.

White complains of pain in his back, right shoulder, right hip, and right knee. The back

pain is typically at a level of six or seven out of ten but if White stays on his feet for three or four

hours, the pain keeps him bed for two or three days. White reclines most of the day unless he has

to go somewhere.  He has dizzy spells two to four times a day when he stands up and sometimes falls to the ground.

## DISCUSSION

I.    Dr. O'Neill's Opinion

White contends that the ALJ erred by rejecting the disability opinion and findings of his treating physician Dr. O'Neill, based on conclusory statements.  White notes that Dr. O'Neill's conclusions are supported by X-ray evidence, his chart notes, and the consistent findings from Dr. Gandler, a rheumatologist.  According to White, the ALJ was required to contact Dr. O'Neill for clarification if he could not ascertain the basis of his opinions.

The Commissioner argues that the evidence as a whole allowed the ALJ to determine White's disability status without contacting Dr. O'Neill because Dr. Gandler gave no opinion about White's ability to work and the record did not contain evidence on which Dr. O'Neill claimed to rely.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is

insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

Dr. O'Neill stated in a letter dated December 6, 2004:

> Alan White is a patient who has been followed in this clinic for the past several years. He carries a diagnosis of hepatitis C and is currently approximately halfway through his therapy with interferon and ribavirin. He also has one of the worst cases of premature osteoarthritis I have ever encountered in the past 18 years. His knees, hips and back are an absolute wreck. He walks with a cane and frequently falls. This has been verified by X-rays, etc. Because of this he is completely and totally incapacitated. In addition, he recently suffered a deep venous thrombosis in his leg and is on anticoagulation because of that. He would certainly, from a financial and medical standpoint, seem to qualify for OHP Plus program as he is totally and completely disabled and will remain so for the rest of his life. In addition, stopping his hepatitis C treatment halfway through therapy would obviously be injurious to his medical health.

Tr. 500.

On June 30, 2006, Dr. O'Neill completed a form for White's counsel in which the doctor stated that White was incapable of even low stress jobs, had to change position every five to ten minutes, could only sit, stand, or walk for less than two hours each, had to lie down several times a day, and would miss work more than four times a month.

The ALJ gave Dr. O'Neill's opinion little weight after concluding that it was not well supported by medically acceptable clinical or laboratory diagnostic studies and that the letter of December 6, 2004 was written in the context to assist White in obtaining health care benefits from the State.

Page 7 - OPINION AND ORDER

I am unconvinced by White's argument that the ALJ should have recontacted Dr. O'Neill. At the hearing, the medical expert had serious doubts about Dr. O'Neill's letter because the X-rays it referred to were not part of the record. The ALJ held open the record for 30 days to allow White's counsel to get the X-ray reports. In response to counsel's request, Dr. O'Neill wrote, "Prior to seeing me, he had spinal X-rays which showed 'Scoliosis & Degenerative Arthritis.' He apparently also had other joints X-rayed. You will need to contact him for details." Tr. 557. It does not appear that Dr. O'Neill had reports from those X-ray studies but instead was relying on White's description of the studies. I will not fault the ALJ for not obtaining evidence which does not exist.

After reviewing Dr. O'Neill's chart notes, I agree with the ALJ that the doctor's opinion that White is completely and totally incapacitated is not well supported by medically acceptable clinical or laboratory diagnostic studies. In particular, Dr. O'Neill accepted White's statements about prior X-ray studies without obtaining copies of the reports. The ALJ did not find White fully credible and White does not challenge this. A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Morgan, 169 F.3d at 602 (internal quotation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Moreover, Dr. Gandler does not opine on White's limitations. I find that the ALJ gave specific and legitimate reasons for discounting Dr. O'Neill's opinion.

II.    <u>Lay Witness Testimony</u>

Lay witnesses Judy White and Robert DePew, who have known White for 17 and 30 years respectively, provided written statements.  White argues that the ALJ improperly discounted this lay witness testimony without any supporting rationale.

The Commissioner contends that the ALJ discredited the testimony for an allowable reason–because it conflicted with more reliable medical evidence.

According to DePew's February 2007 statement, White's pain moderately affects his ability to perform light chores such as shopping and cooking and extremely affects his ability to do anything else.  Allen used to be very sociable but is now a total recluse 90 percent of the time and has repeated month-long periods of depression and anxiety, including when White stayed in the station wagon in which he was living for nearly a week.  White's short term memory is shot, in DePew's opinion, and White has difficulty concentrating on the task at hand.  DePew sees White's feet and legs swell to where he is unable to walk.  DePew has had to help White get out of bed, get up from a sitting position, and walk to the bathroom.

Judy White gave a statement in January 2007.  She claims that White has marked difficulty in performing his activities of daily living.  Judy White has taken White to the store where he uses an electric cart.  Twenty to thirty minutes riding in a car makes it hard for White to get out of the car and stand.  She claims he has trouble walking, which causes him to use a cane and walk slowly.  A couple of hours moving around makes it painful for White to stand up and get walking again.  She witnessed White changing from being very outgoing to staying alone, suffering depression and anxiety attacks, and even staying away from a Thanksgiving family gathering, something he used to greatly enjoy.  Judy White has witnessed White having to reread

Page 9 - OPINION AND ORDER

pages and ask for conversations to be repeated because of concentration problems. She states that at times White misses important appointments because he cannot force himself to take public transportation.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Commissioner of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ found this lay testimony of limited use because: (1) neither DePew nor Judy White is trained to critically evaluate if the complaints are exaggerated or inconsistent with objective evidence; and (2) there is more reliable evidence from medical professionals who are trained to evaluate impairments and their impact on functional capacity.

Both of the ALJ's reasons reduce to the fact that the two lay witnesses are not medical professionals. This is not a legitimate reason because it could be levied against any lay witness. Moreover, the ALJ did not specify how their testimony, which was quite detailed, is contradicted by medical evidence.

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

Page 10 - OPINION AND ORDER

If I fully credited the lay testimony, White would be emotionally unable to work numerous days a month, in addition to his physical impairments. Thus, the error is not harmless. Moreover, the hypothetical question would lack some of White's limitations. Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen, 80 F.3d at 1292. The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004).

It is not clear whether the lay testimony should be credited. For example, I am concerned that the witnesses describe such serious mental health impairments but White has not been treated for them. I realize that White is homeless but he is receiving care for his physical health problems. Consequently, I would like the ALJ to address the testimony in more detail.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

Dated this _____1st_____ day of October, 2008.


\_\_\_\_/s/ Garr M. King_____
Garr M. King
United States District Judge